Scott E. Davis, Esq.
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Michael Lopez*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Michael Lopez,<br><br>         Plaintiff,<br><br>     v.<br><br>The Lincoln National Life Insurance Company; Drivetime Automotive Group, Inc.; Drivetime Automotive Group, Inc. Disability Plan,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Michael Lopez (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1.     Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

1

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2. Plaintiff is a resident of Maricopa, Arizona.

3. Upon information and belief, Defendant Drivetime Automotive Group, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered an Employee Welfare Benefit Plan within the meaning of 29 U.S.C. §1002(1). The specific weekly disability income policy was purchased and fully insured by The Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln"), and may be known as policy number 000010069507 (hereinafter referred to as the "STD Policy"). Upon information and belief, the STD policy may have been included in and part of the Drivetime Automotive Group, Inc. Disability Plan (hereinafter referred to as the "Plan") which was created to provide the Company's employees with welfare benefits.

4. Upon information and belief, the Company or Plan may have delegated responsibility and/or claim administration of the STD policy to Lincoln. Plaintiff believes that as it relates to his claim, Lincoln functioned as the Plan and/or Claim Administrator; however, pursuant to the relevant ERISA regulation, the Company and/or Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Lincoln.

5. Upon information and belief, Lincoln operated under a structural conflict of interest in that it functioned in dual roles as the claims administrator and payor of benefits; *to wit*, if Lincoln approved Plaintiff's claim, it was also liable for payment of benefits. [1]

---

[1] In *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008) the court held, "In Bruch, the Supreme Court instructed us to "weigh[ ]" a fiduciary's "conflict of interest" as "a 'facto[r] in determining whether there is an abuse of

6. Upon information and belief, the Company also sponsored, subscribed to and administered a group long term disability insurance policy (hereinafter referred to as the "LTD Policy") which was fully insured and administered by Lincoln. The Company's purpose in subscribing to the Lincoln LTD policy was to provide long term disability insurance benefits for its employees. Upon information and belief, the Lincoln LTD policy may have also been included in and part of the Plan. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

7. In its role of insuring and administering the LTD policy, Lincoln operated under a structural conflict of interest in that it was the decision maker and payor of benefits; *to wit,* Lincoln's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits. [2]

8. The Company, Plan and Lincoln conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

9. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

---

discretion.' " 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). *MetLife labors under such a conflict of interest: It both decides who gets benefits and pays for them, so it has a direct financial incentive to deny claims.* See Langbein, supra, at 1321 ("The danger pervades the ERISA-plan world that a self-interested plan decision maker will take advantage of its license under Bruch to line its own pockets by denying meritorious claims.")(emphasis added).

[2] "A plan administrator's dual role of both evaluating and paying benefits claims creates the kind of conflict of interest referred to in Firestone. *That conclusion is clear where it is the employer itself that both funds the plan and evaluates the claim*, but a conflict also exists where, as here, the plan administrator is an insurance company. For one thing, the employer's own conflict may extend to its selection of an insurance company to administer its plan." *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (U.S. 2008) (emphasis added).

3

*Nature of the Complaint*

10. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks short term disability income benefits from the Plan and/or the relevant aforementioned policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to as a result of being found disabled.

11. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 5, 2011 due to serious medical conditions and was unable to work in his designated occupation as a Collection Support Representative. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

12. Plaintiff applied for short term disability benefits under the relevant policy which was administered by Lincoln, and upon information and belief, the definition of disability in the policy governing Plaintiff's short term disability claim is as follows:

> Total Disability or Totally Disabled means the Insured Person's inability, due to Sickness or Injury, to perform each of the Main Duties of his or her Own Occupation. A Person engaging in any employment for wage or profit is not Totally Disabled. The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

13. In support of his claim for short term disability benefits, Plaintiff submitted to Lincoln medical records from his treating physicians supporting his disability as defined by the relevant STD policy.

14. Lincoln notified Plaintiff in a letter dated December 9, 2011 it was denying his claim for short term disability benefits.

15. Plaintiff timely appealed Lincoln's December 9, 2011 denial of his short term disability claim. In a letter dated December 14, 2011, Lincoln informed Plaintiff it was approving his claim for short term disability benefits for the period of October 19, 2011 through October 26, 2011.

16. In a letter dated January 4, 2012, Plaintiff appealed Lincoln's December 14, 2011 termination of his short term disability benefits beyond October 26, 2011 and submitted to Lincoln additional medical evidence supporting his disability.

17. Lincoln notified Plaintiff in a letter dated February 21, 2012 that his claim for short term disability benefits had been denied.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 21, 2012 denial of his claim for short term disability benefits and, in support of his appeal, Plaintiff submitted additional medical and vocational evidence demonstrating he met any definition of disability set forth in the relevant STD policy.

19. In support of his appeal, Plaintiff submitted to Lincoln an August 6, 2012 Checklist Letter completed by his treating board certified physician who confirmed it was his medical opinion Plaintiff "is unable to sustain any type of full time employment on a consistent basis and has been since October 5, 2011…"

20. Plaintiff further submitted in his appeal a May 22, 2012 Residual Functional Capacity Form and narrative letter authored by his treating chiropractor who opined, "The patient has limited use of his hands, arms, and back. Attempting to work would exacerbate his condition."

21. Plaintiff also submitted a Functional Capacity Evaluation Report to Lincoln dated April 13, 2012 wherein after an extensive evaluation by a qualified physical therapist, that due to the severity of Plaintiff's medical conditions they opined, "…based on a reasonable degree of medical certainty, it is this evaluator's opinion that [Plaintiff]

5

1   would be unable to perform a job description at the <u>sedentary work level,</u> on a full-time
2   basis."

3       22.    In addition to the medical records and reports submitted to Lincoln, Plaintiff
4   submitted a May 7, 2012 sworn affidavit from his mother, who confirmed Plaintiff is
5   unable to work in any occupation and his condition has not improved in any way since his
6   date of disability.

7       23.    During the administrative review of Plaintiff's claim, he also applied for and
8   received Social Security disability benefits through the Social Security Administration
9   (hereinafter referred to as the "SSA").

10      24.    The SSA found Plaintiff became disabled from engaging in any gainful
11  occupation which may have existed in the national economy as of October 5, 2011.
12  Plaintiff submitted to Lincoln a copy of his July 27, 2012 Notice of Award from SSA.

13      25.    The SSA's definition of disability is more stringent and difficult to meet than
14  the aforementioned definition of disability in the STD policy.  Therefore, the SSA's
15  approval of Plaintiff's claim is relevant evidence for this Court to consider with regard to
16  the lawfulness of Lincoln's decision to deny Plaintiff's benefits and in the process, not
17  properly evaluating SSA's decision or giving it appropriate weight in its determination of
18  whether Plaintiff met the definition of disability set forth in the STD policy.

19      26.    The relevant STD policy pays a short term disability benefit for a maximum
20  of 11 weeks.  If Plaintiff's short term disability claim had not been denied by Lincoln, he
21  would have also been eligible to file a claim for an begin receiving long term disability
22  benefits on or about December 21, 2011.

23      27.    On September 18, 2012 Plaintiff applied for long term disability benefits
24  under the relevant LTD policy, which was also administered by Lincoln.  Upon information

and belief, the relevant LTD policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> Total Disability or Totally Disabled will be defined as follows:
>
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Inured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
>
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness, the Insured Employee is unable to perform each of the Main Duties of any Gainful Occupation.

28. In support of his claim for long term disability benefits, Plaintiff submitted to Lincoln the same evidence as was submitted in his claim for short term disability benefits and referenced *supra.*

29. As part of its review of Plaintiff's claims for short and long term disability benefits, Lincoln obtained a medical records only, "peer review" of Plaintiff's claim from Joanne R. Werntz, M.D.

30. Upon information and belief, Plaintiff believes Dr. Werntz is a long time medical consultant for the disability insurance industry and Lincoln. Plaintiff believes Dr. Werntz has an incentive to protect her own consulting relationship with the disability insurance industry and Lincoln by providing medical records only peer reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claims, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's short and long term disability claims.

31. In a letter dated September 11, 2012 Lincoln provided Plaintiff with a complete copy of the peer review report authored by Dr. Werntz and the opportunity for Plaintiff's physicians to respond to Dr. Werntz's report.

32. In response to Dr. Werntz's report, Plaintiff submitted an October 9, 2012 narrative letter from his board certified treating physician as well as an October 3, 2012 narrative letter from his chiropractor, who both confirmed they disagree with the conclusions set forth in Dr. Werntz's report, specifically her opinion that Plaintiff is capable of working.

33. In a letter dated November 8, 2012, Lincoln notified Plaintiff it had denied his appeal for short term disability benefits under the STD policy. In the letter, Lincoln also notified Plaintiff he had exhausted his administrative levels of review relating to this claim and could file a civil action lawsuit in federal court pursuant to ERISA.

34. In a letter dated November 19, 2012, Lincoln notified Plaintiff it had denied his claim for long term disability benefits under the LTD Policy.

35. In evaluating Plaintiff's claims on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's STD claim "solely in his best interests and other participants" which it failed to do.[3]

36. Lincoln failed to adequately investigate Plaintiff's case and failed to engage Plaintiff in a dialogue during the appeal of his STD claim with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim. Lincoln's failure to investigate the claims and to engage in this dialogue or to obtain the evidence it believed was important to

---

[3] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

37. Plaintiff believes Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate his claim; failing to have him examined by a medical professional; providing a one sided review of Plaintiff's claim that failed to consider all evidence submitted by him and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the impact the combination of those diagnoses and impairments would have on his ability to work; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

38. Plaintiff further believes the reason Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Lincoln undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff also believes a reason Lincoln did not approve his short term disability claim is because Lincoln also fully insured his long term disability claim and if it approved his short term claim, Plaintiff would have then been eligible to apply for and receive long term disability benefits from Lincoln. Lincoln's conflict manifested in Plaintiff's claims because the amount of and value of his long term disability benefits were significantly larger than his short term disability benefits. Thus, when Lincoln denied Plaintiff's short term disability claim, it not only saved money by not paying that claim but also by not paying any long term disability benefits.

39. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Lincoln and any individual who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of any conflict of interest which may have impacted or influenced Lincoln's decision to deny his STD claim.

40. With regard to whether Plaintiff meets the definition of disability set forth in the relevant policies, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Lincoln as referenced herein are so flagrant they justify *de novo* review.

41. As a direct result of Lincoln's decision to deny Plaintiff's short term disability claim, he has been injured and suffered damages in the form of lost short term disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include, but not be limited to, health and other insurance related coverage or benefits, retirement benefits or a pension, a life insurance policy and/or the waiver of the premium on a life insurance policy in the event he was found disabled by Lincoln and/or the Plan.

42. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

43. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff his short term disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Plan and/or policy from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order directing Defendants to continue paying Plaintiff the aforementioned benefits until such time as he meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 26th day of April, 2013.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
   Scott E. Davis
   Attorney for Plaintiff